IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 5965 |
| ) | |
| ANTONIO LOPEZ-POPOCA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Antonio Lopez-Popoca has moved the Court pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence on a narcotics conspiracy charge. The indictment alleged that Lopez-Popoca participated in a drug trafficking operation that involved the receipt and resale of large amounts of cocaine and heroin. Lopez-Popoca pled guilty and was sentenced by Judge William Hibbler to a prison term of 188 months. In his section 2255 motion, Lopez-Popoca primarily asserts that his attorney rendered constitutionally ineffective assistance in violation of his Sixth Amendment rights. For the reasons stated below, the Court denies the motion in part and orders the government to submit additional materials in support of its position on one of Lopez-Popoca's claims.

### Background

On May 10, 2007, Lopez-Popoca, German Pasion-Rios, and Ricardo Delgado-Acasio were indicted for participation in drug trafficking operations in Chicago. Lopez-

Popoca was charged with one count of conspiracy to possess cocaine and heroin with intent to distribute, one count of possession of cocaine with intent to distribute, and one count of possession of heroin with intent to distribute.

Lopez-Popoca pled guilty to the conspiracy charge. He entered into a plea agreement with the government in which he admitted that the following facts were true and that they established his guilt beyond a reasonable doubt:

> Beginning in or around at least January 2007 and continuing to on or about April 20, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant conspired with . . . German Pasion-Rios, and with others, including Individuals A and B, knowingly and intentionally to distribute and to possess with intent to distribute controlled substances, namely, five kilograms or more of mixtures containing cocaine . . . and one kilogram or more of mixtures containing heroin . . . .
>
> Specifically, beginning sometime in approximately early 2005 and continuing to on or about April 20, 2007, at locations in the Chicagoland area, defendant began to receive kilogram quantities of cocaine and, less frequently, kilogram quantities of heroin from two Mexican nationals. The Mexican nationals "fronted" the narcotics to defendant, meaning defendant received narcotics from the Mexican nationals without being required to pay for the narcotics immediately. Defendant negotiated with the Mexican nationals concerning price and logistics of delivery of the narcotics.
>
> Often, the Mexican nationals delivered the narcotics to the basement apartment at 2957 N. Lawndale, Chicago, Illinois, where German Pasion-Rios and, more recently, Ricardo Delgado-Acasio, assisted defendant by receiving the narcotics on defendant's behalf and preparing it for resale to defendant's customers.
>
> Two of defendant's customers were Individual A and Individual B. Overall, defendant supplied Individual A and Individual B with approximately 45 kilograms of cocaine and approximately three kilograms of heroin. Defendant "fronted" these narcotics to Individuals A and B.
>
> In furtherance of the conspiracy, on April 20, 2007, defendant had a conversation with Individual A, who, by that time, unbeknownst to the defendant, was cooperating with agents of the Drug Enforcement Administration. Defendant told Individual A that defendant had "a hand in stock," meaning five kilograms of cocaine. During that and subsequent conversations, defendant and Individual A also discussed a kilogram of heroin. Defendant and Individual A agreed to meet

in order for defendant to supply Individual A with narcotics, and defendant told Individual A to meet him "at the house," meaning 2957 N. Lawndale, Chicago, Illinois. Defendant then went to 2957 N. Lawndale, where Pasion-Rios and Delgado-Acasio were already present. Defendant, Pasion-Rios, and Delgado-Acasio met with Individual A and Individual B, and defendant supplied Individual A and Individual B with two kilograms of cocaine and one kilogram of heroin. Also located at 2957 N. Lawndale at the time was an additional kilogram of heroin and three additional kilograms of cocaine.

Pl. Ex. A. at 2-4. Judge Hibbler conducted a hearing on June 3, 2008, at which he questioned Lopez-Popoca about his decision and then accepted his guilty plea.

On August 26, 2008, Judge Hibbler held a sentencing hearing. After hearing arguments from counsel regarding the appropriate advisory Sentencing Guidelines calculation, Judge Hibbler concluded that the correct advisory range was 188 to 235 months. After hearing further argument and having the interpreter read into the record several letters from Lopez-Popoca's family and friends, Judge Hibbler stated:

> It is always a difficult chore to impose [a] sentence after having considered many letters and communications that talk about the positive attributes of any defendant. But the Court is not only concerned with the defendant but with the conduct that caused him to be in this situation. And as I listen to the letters, or read letters, I am often concerned not only with the defendant but what is the result of the conduct of the defendant. And I sometimes wonder how many young people are now addicted or incarcerated or dead because of the defendant's conduct.
>
> I hear about what a good worker and hard worker he is. And I cannot close my eyes to the fact that his work was distributing this poison to our young people that has caused so much injury and so much pain and so much sorrow across this country and across the world.
>
> I think that the defendant has engaged in this conduct for some extensive period of time. He was involved with other individuals. And the only justification for his involvement was the almighty dollar, and it didn't matter who was hurt, as long as he was able to ply his trade and get the benefits of that trade.
>
> I find no reason to not impose a sentence within the guideline range, even though that range, I think, is very draconian and it is. But that's a decision that I didn't make; the defendant made.

> And therefore, based upon the defendant's conduct, based upon the facts of this case, I am going to sentence the defendant to a term in the Bureau of Prisons of 188 months. Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years.

Aug. 28, 2008 Tr. at 38-39.

Lopez-Popoca appealed his sentence, contending that Judge Hibbler had incorrectly found that he was a "manager or supervisor" in the conspiracy for purposes of U.S.S.G. § 3B1.1(b), which increased his base offense level by three. The Seventh Circuit rejected this argument and affirmed the sentence. *United States v. Lopez-Popoca*, 341 Fed. Appx. 179 (7th Cir. 2009).

## Discussion

Contentions that a defendant could have made but failed to raise on direct appeal are considered procedurally defaulted and cannot be asserted via a section 2255 motion absent a viable excuse for the default. *See, e.g.*, *Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004). A claim of ineffective assistance of counsel, however, may be brought via a section 2255 motion whether or not the defendant could have raised the claim on direct appeal. *Gallo-Vasquez v. United States*, 402 F.3d 793, 799 n.1 (7th Cir. 2005) (citing *Massaro v. United States*, 538 U.S. 500, 508-09 (2003)).

In determining whether Lopez-Popoca's counsel rendered unconstitutionally ineffective assistance, the Court applies the principles of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Lopez-Popoca must make a two-part showing. First, he must demonstrate that his attorney's performance "fell below an objective standard of reasonableness." *Id*. at 688. Second, he must demonstrate that his attorney's performance prejudiced him – he "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. "This test is highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005) (internal quotation marks and citation omitted).

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) (internal quotation marks and citations omitted). "In the context of a guilty plea, the prejudice requirement is satisfied if the defendant shows 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Morales v. Boatwright*, 580 F.3d 653, 659 (7th Cir. 2009) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). *See Missouri v. Frye*, __ S. Ct. __, 2012 WL 932020 (Mar. 21, 2012) (*Hill* continues to provide the standard for cases in which a defendant contends that ineffective assistance led him to accept a plea offer rather than proceeding to trial).

A claim of ineffective assistance in the sentencing context requires a defendant, to establish prejudice, to show a reasonable probability that he would have received a lesser sentence. *See Glover v. United States*, 531 U.S. 198, 203 (2001). In addition, "an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's [Sentencing] Guidelines calculations that results in a longer sentence may constitute ineffective assistance." *United States v. Jones*, 635 F.3d 909, 916 (7th Cir.

2011).

**1.      Use of interpreter at out-of-court meetings**

Lopez-Popoca contends that he is unable to speak English and that his trial attorney failed to arrange for an interpreter for any of the six meetings they had before Lopez-Popoca pled guilty. He claims that he therefore "failed to know of any trial strategies for a defense prior to being induced by [counsel] to plead guilty." Def.'s Mem. at 1.

Lopez-Popoca was provided with an interpreter during his plea colloquy in court and was also placed under oath. When Judge Hibbler asked if he had talked to his lawyer about the plea agreement, Lopez-Popoca said, "Yes, yes." June 3, 2008 Tr. at 2. Judge Hibbler told Lopez-Popoca that he could recess to speak with his lawyer or ask for clarification if there was something he did not understand. Judge Hibbler explained that the charge carried a statutory minimum of ten years and a maximum penalty of life imprisonment. He explained in several ways that the Sentencing Guidelines were not mandatory and that there was no guarantee of what sentence he would impose, despite anything Lopez-Popoca might have been told by his attorney. Lopez-Popoca indicated, while under oath, that he understood all of these explanations. He also stated that he had not been threatened or forced to plead guilty, and he agreed that he had been "entirely satisfied with the representation that [he] received from [his] lawyer during the pendency of this case." *Id*. at 16. He then stated that the facts as related by the government and in the plea agreement were true and correct and that he wanted to plead guilty.

The Seventh Circuit has recognized that "[c]ounsel's inability to communicate

with his client because of a language barrier may render his assistance constitutionally ineffective." *Gallo-Vasquez*, 402 F.3d at 799. The court has also held repeatedly, however, that when a "court conduct[s] a thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [defendant's] part before the plea [is] accepted" and a defendant "admit[s] that he underst[ands] the consequences," a plea is "voluntary and . . . made with full knowledge of its consequences." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). This is particularly true because "defendants cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity." *Wozny v. Grams*, 539 F.3d 605, 609-10 (7th Cir. 2008) (internal quotation marks and citations omitted).

In light of this principle, the Seventh Circuit has affirmed the denial of claims that are nearly identical to Lopez-Popoca's. *See, e.g.*, *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007) (rejecting defendant's assertion that lack of interpreter at pre-plea meetings rendered plea involuntary because of "assurances given to the judge, under oath, when entering the plea . . . through an interpreter [] that he fully understood the plea and the bargain's terms), *vacated on other grounds*, 128 S. Ct. 2990 (2008); *United States v. Barrios-Lopez*, 320 Fed. Appx. 464, 466 (7th Cir. 2009) (holding that assurances under oath rendered frivolous any "argument that the plea was not voluntary" because of "limited English proficiency").[1]

---

[1]Although *Nunez* was vacated, the Seventh Circuit noted on remand that its holding that the plea was voluntary was "not within the scope of the remand." *Nunez v. United States*, 546 F.3d 450, 452 (7th Cir. 2008).

The Seventh Circuit has also noted that a "petitioner's failure to complain [before a post-sentencing motion] about a problem that would have been obvious to him – an almost complete inability to communicate with his lawyer – calls into question whether such a problem really existed." *Gallo-Vasquez*, 402 F.3d at 799 n.1. *See also Yu Tian Li v. United States*, 648 F.3d 524, 532 (7th Cir. 2011) (defendant who participated in trial with an interpreter and "never notified the court of any problems understanding the proceedings or his counsel"). "What is more, if, as the record demonstrates, [defendant] fully understood the bargain's terms by the time he stood before the judge, it doesn't make any difference whether he understood all of what his lawyer had said earlier." *Nunez*, 495 F.3d at 546.

For these reasons, the complete absence of any indication from Lopez-Popoca (or otherwise) during his plea hearing that he had any problem communicating with counsel strongly suggests that counsel's assistance was not, in fact, ineffective. Even if counsel had been ineffective, however, Lopez-Popoca would be required to demonstrate prejudice. To do so, he must show that absent counsel's alleged misfeasance "he would not have pled guilty but would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006). Lopez-Popoca has made no such contention in his motion.

**2.     Mischaracterization of sentencing consequences**

Lopez-Popoca contends that his attorney "failed to inform him that his sentence may be enhanced by relevant conduct and [told him] that his maximum sentencing exposure would be 10 to 11 years in prison." Def.'s Mem. at 7. He asserts that the

"advice concerning sentencing consequences was certainly his decisive factor in his decision to plead guilty." *Id.* at 8. The Court construes this as an assertion that Lopez-Popoca would have chosen to go to trial if counsel had accurately explained the possible sentence.

Lopez-Popoca's claim is not legally viable. During his guilty plea hearing, he assured Judge Hibbler, under oath, that he understood that the maximum sentence was a term of life imprisonment and that he had no guarantee what the sentence would be, irrespective of anything his lawyer had said. And he nonetheless persisted in his guilty plea. In similar circumstances, the Seventh Circuit has rejected ineffective assistance claims:

> The court thus informed [defendant] in six or seven different ways that he could not rely on any particular predictions or discussions about a possible sentence when he entered his plea. Under oath, [defendant] stated that he understood all of this and still wanted to plead guilty. In doing so, he was affirming that his guilty plea was not made in reliance of a particular sentence. He cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted. He specifically disclaimed that risk at his change of plea hearing.

*Bethel*, 458 F.3d at 718. In *Bethel*, the Seventh Circuit cited *Moore v. Bryant*, 348 F.3d 238, 240 (7th Cir. 2003), for the proposition that "an erroneous sentencing prediction of nearly double the time that the defendant would actually have faced" would be likely to impact a plea decision. *Id*. Even such a significant margin, however, would only "give us pause if [defendant] had not repeatedly insisted at his plea hearing that he was not relying on a particular sentence in entering his plea." *Id.* at 719. Because the defendant "assured all concerned that he wished to plead guilty no matter what the sentencing consequences of that plea turned out to be," he was "therefore not

prejudiced by his lawyer's advice." *Id.* at 720.

For these reasons, Lopez-Popoca has not shown that his attorney's alleged mischaracterization of the sentencing possibilities violated his Sixth Amendment rights.

**3.    Immigration consequences**

Lopez-Popoca next argues that his constitutional rights were violated by his counsel "failing to conduct plea negotiations with the government to avoid deportation." Def.'s Mem. at 6. In support, he cites *Padilla*, which he admits stands for the proposition "that a criminal defense attorney has a duty under the Sixth Amendment to inform a non-citizen client of the adverse immigration consequences of a guilty plea." *Id*. Lopez-Popoca also contends, however, that the case "directs counsel to ensure . . . that negotiation of charges that will avoid immigration complications will be part of the plea bargaining process." *Id*.

As the government points out, *Padilla* stands for no such thing. Rather, the case concerns "*advice* regarding deportation." *Padilla*, 130 S. Ct. at 1482 (emphasis added). In any event, neither criminal prosecutors nor district court judges make decisions regarding deportation. Rather, those decisions are made by the immigration authorities. Lopez-Popoca cannot establish that he received ineffective assistance of counsel on this basis.

4.    **Sentencing**

Lopez-Popoca contends that his lawyer provided ineffective assistance during his sentencing hearing by failing to make various arguments and objections.

First, he argues that his counsel failed to apprise Judge Hibbler of two "mitigating

factors": the fact that he has three children and the fact that he is a non-citizen who is likely to be deported after his release. It is clear, however, that Judge Hibbler was made aware of both of these matters. First, counsel specifically mentioned Lopez-Popoca's family during argument before Judge Hibbler. Counsel also placed in the record letters from Lopez-Popoca's wife and sons, as well as other letters from family and friends that discussed his children. Thus, Lopez-Popoca's contention that his counsel failed to bring up this point is simply incorrect.

Although the transcript of the sentencing hearing does not reflect that counsel made specific reference to Lopez-Popoca's immigration status, Judge Hibbler was indisputably aware of Lopez-Popoca's status and the likely consequences of sentencing: he imposed as a supervised release condition that Lopez-Popoca was to be surrendered to the immigration authorities for possible deportation. Aug. 24, 2008 Tr. at 40. As a result, Lopez-Popoca cannot show that the result of the proceeding is reasonably probable to been different if counsel had made Judge Hibbler aware of the immigration consequences of Lopez-Popoca's guilty plea and sentence.

Lopez-Popoca next contends that his counsel was ineffective for failing to urge Judge Hibbler to impose a sentence that is "sufficient but no greater than necessary." This argument is unavailing. The transcript of the sentencing reflects that Lopez-Popoca's attorney made multiple arguments about the appropriate guideline calculation and other requests for leniency, including reminders that "the guidelines in this case are advisory" and that the judge should impose an "appropriate sentence . . . below the guidelines." Aug. 26, 2008 Tr. at 30-31. Lopez-Popoca has provided nothing to suggest that the sentence would have been more lenient if counsel had used a

particular phrase. This is particularly clear in light of the Seventh Circuit's refusal to require judges to use the words "sufficient but no greater than necessary," *United States v. Abebe*, 651 F.3d 653, 656-57 (7th Cir. 2011), which demonstrates that the focus of an inquiry into the adequacy of a sentencing is the substantive arguments and reasoning advanced during the proceeding, not the use of any particular phrase.

Lopez-Popoca's argument that counsel was ineffective for failing to object to Judge Hibbler's supposed failure to consider the sentencing factors listed in 18 U.S.C. § 3553(a) fails for a similar reason. "District courts need not recite any magic words at sentencing to assure us that the correct standard is being used." *United States v. Pennington*, 667 F.3d 953, 956 (7th Cir. 2012). "The judge need only make a record that shows 'a reasoned basis for exercising his own legal decision-making authority.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). Judge Hibbler's statements while pronouncing the sentence demonstrate that he recognized that Lopez-Popoca had positive character traits, though he concluded these were outweighed by the gravity of the offense. Lopez-Popoca has not shown that this reflected an inadequate consideration of the section 3553(a) factors, let alone that an objection to the supposed inadequacy is reasonably probable to have produced a lower sentence.

Lopez-Popoca also maintains that his attorney was ineffective for failing to object to a number of substantive determinations by Judge Hibbler. First, he contends that Judge Hibbler failed to make a specific finding regarding the drug quantity involved in the case. He is correct that Judge Hibbler did not make an affirmative declaration that Lopez-Popoca was responsible for a specific amount. From the arguments over the

guidelines, however, it is clear that Judge Hibbler accepted the government's contention that Lopez-Popoca was responsible for at least the quantity specified in the Sentencing Guidelines offense level that the judge found. This, in turn, was based on the facts that Lopez-Popoca himself adopted in his plea agreement and again during his plea colloquy. "Admissions in a plea agreement . . . conclusively establish" drug quantity, *United States v. Krasinski*, 545 F.3d 546, 552 (7th Cir. 2008), and Seventh Circuit "case law makes clear that this is a task that can be accomplished by reasonable approximation." *United States v. Dean*, 574 F.3d 836, 845-46 (7th Cir. 2009). Even if a more specific statement by Judge Hibbler might have been desirable, Lopez-Popoca has provided nothing to indicate a reasonable probability that an objection would have resulted in a different quantity finding or a different sentence.

Lopez-Popoca's contention that counsel was ineffective in failing to object when Judge Hibbler relied on hearsay or otherwise insufficiently reliable evidence in determining the drug quantity is likewise unavailing. The Seventh Circuit has held that "a sentencing court clearly errs by considering hearsay evidence only if the evidence was devoid of *any* indicia of reliability." *United States v. Sanchez*, 507 F.3d 532, 538 (7th Cir. 2008) (emphasis added). The government asserted that there were multiple hearsay statements that were consistent with each other, the version of the facts to which Lopez-Popoca agreed, and Lopez-Popoca's post-arrest statements. Lopez-Popoca's attorney specifically asked Judge Hibbler to take into account that the statements by the co-conspirators were hearsay and therefore less reliable. There is nothing to indicate that a further objection is reasonably probable to have had any effect on Judge Hibbler's determination.

Lopez-Popoca argues that counsel was ineffective for failing to object to Judge Hibbler's failure "to explicitly state and support . . . the finding that unconvicted activities bore the necessary relation to the convicted offense." Def.'s Mem. at 24. Lopez-Popoca's argument that an objection on this point would have altered the outcome of the case, however, depends on his assertion that the temporal scope of the conspiracy to which he pled guilty should not have included all of the drug quantities that factored into his sentence. As the government points out, defense counsel made this argument at sentencing. The same is true of Lopez-Popoca's argument that counsel failed to the object to the imposition of a guideline enhancement based on his role as a manager or supervisor. Not only did counsel make this argument during the sentencing hearing, but Lopez-Popoca appealed the judge's underlying determination, and the Seventh Circuit rejected Lopez-Popoca's contentions. *See United States v. Lopez-Popoca*, 341 Fed. Appx. at 181. There is nothing to suggest that a further objection on either of these points is reasonably probable to have resulted in a lower sentence.

Lopez-Popoca also seeks an evidentiary hearing on these claims. Courts "should grant an evidentiary hearing on a § 2255 motion when the petitioner alleges facts that, if proven, would entitle him to relief." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir.2010) (internal quotation marks omitted). However, "the district court need not hold an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* at 699-700 (internal quotation marks omitted); 28 U.S.C. § 2255(b). Such is the case here. The Court concludes that no hearing is necessary on these claims.

5. **Interstate commerce**

Lopez-Popoca claims that no federal court can have jurisdiction over his criminal case because he "never took advantage as a registrant or recipient of benefits of a federal program." Def.'s Mem. at 32. To the contrary, the Seventh Circuit has held that "statutes prohibiting trafficking of controlled substances deal directly with commerce." *United States v. McKinney*, 98 F.3d 974, 978 (7th Cir. 1996). Lopez-Popoca has provided no support for the proposition that he must register for a "benefit from any federal agency regulating controlled substances" in order to be brought within the jurisdiction of this Court. Def.'s Mem. at 33. No affirmative act is needed: it is clear that the federal government is authorized to "regulate all commerce in controlled substances." *McKinney*, 98 F.3d at 980. Lopez-Popoca's argument fails.

6. **Post-arrest statements**

Lopez-Popoca's final argument is that his attorney provided ineffective assistance by failing to file a motion to suppress the statements that Lopez-Popoca made to law enforcement after his arrest. Failure to file a motion to suppress can provide a basis for an ineffective assistance claim. *See Gentry v. Sevier*, 597 F.3d 838, 851-52 (7th Cir. 2010). To succeed on such a claim, the Seventh Circuit has "required that a defendant prove the motion [to suppress] was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). A defendant must also show that he informed trial counsel of the alleged violation or that "counsel should or could have learned the version of the events [defendant] posits . . . by doing anything more than he did to investigate the case." *Koons v. United States*, 639 F.3d 348, 354 (7th Cir. 2011).

Lopez-Popoca has submitted an affidavit in which he states that his post-arrest statements were involuntary "due to my limited english [sic] and the agents coerced me into giving statements by promising me leniency & assisting me in staying in the United States." Lopez-Popoca Aff. at 1. He also claims that he made the statements without the benefit of counsel, although he does not indicate whether he had requested an attorney. Construing Lopez-Popoca's *pro se* affidavit liberally, the Court concludes that he has alleged, albeit in conclusory fashion, facts that, if true, might prove a constitutional violation.

The government argues that even if Lopez-Popoca's contentions are correct, he cannot show that his attorney's failure to file a motion to suppress prejudiced him because there was "overwhelming" evidence against him even without his statements to law enforcement. Pl.'s Resp. at 16; *see also Cieslowski*, 410 F.3d at 361 (attorney's choice not to file motion to suppress inculpatory statements "because it would have made little difference considering the overwhelming evidence . . . fall[s] squarely within the realm of strategic choice"). The government's brief, however, does not indicate clearly what this evidence is or exactly what evidence the government would have possessed without Lopez-Popoca's post-arrest statements. In addition, the government's arguments during the sentencing hearing indicate that Lopez-Popoca's post-arrest statements contributed significantly to the factual basis for the charges against him. *See* Aug. 26, 2008 Tr. at 6-8.

Based on the current record, the Court cannot make a determination on the issue of prejudice. Rather than holding an evidentiary hearing on the issue at this stage, however, the Court will give the government the opportunity to supplement its

brief and the record to attempt to establish that sufficient evidence existed beyond Lopez-Popoca's post-arrest statements to make even a successful a motion to suppress immaterial. The Court will also give Lopez-Popoca an opportunity to respond to any additional material the government offers.

**Conclusion**

For the reasons stated above, the Court denies all of defendant's claims other than his ineffective assistance claim regarding the non-filing of a motion to suppress. The Court directs the United States to file, by May 10, 2012, a supplemental submission to support its contention that defendant's attorney did not render deficient performance in failing to move to suppress defendant's post-arrest statements. The Court directs defendant to file a reply to the government's supplemental submission by no later than June 7, 2012.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 12, 2012